IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DIEBOLD NIXDORF, INC., and DIEBOLD SELF SERVICE SYSTEMS, <br><br> Plaintiffs, <br><br> v. <br><br> HYOSUNG TNS, INC. and NAUTILUS HYOSUNG AMERICA INC., <br><br> Defendants. | C.A. No. 19-1695 (LPS) <br><br> **DEMAND FOR JURY TRIAL** |

## FIRST AMENDED COMPLAINT

Plaintiffs Diebold Nixdorf, Inc.[1] and Diebold Self-Service Systems (collectively, "Diebold") hereby set forth their Complaint against Hyosung TNS Inc. and Nautilus Hyosung America, Inc. (collectively, "Hyosung" or "Defendants"), as follows:

## NATURE OF THE CASE

1. This action is for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.* Diebold seeks monetary damages and injunctive relief in this action.

## THE PARTIES

2. Plaintiff Diebold Nixdorf, Inc. is an Ohio corporation with its principal place of business at 5995 Mayfair Road, North Canton, Ohio 44720.

3. Plaintiff Diebold Self-Service Systems is a New York general partnership with its principal place of business at 5995 Mayfair Road, North Canton, Ohio 44720. Diebold Self-Service Systems is a wholly-owned subsidiary of Diebold Nixdorf, Inc.

---

[1] Diebold, Inc. has been renamed Diebold Nixdorf, Inc.

4. Upon information and belief, Hyosung TNS Inc. is a company organized and existing under the laws of South Korea, having a principal place of business at 281 Gwangpyeong-ro, Gangnam-gu Gu, Gangnam-Gu, Seoul, South Korea. Upon information and belief, Hyosung TNS, Inc., among other things, engages in the sale for importation in the United States and importation into the United States of automated teller machines, ATM modules, components thereof, and products containing the same, including the Accused Products described below.

5. Upon information and belief, Nautilus Hyosung America Inc.[2] is a company organized and existing under the laws of the State of Delaware, having a principal place of business at 6641 N. Beltline Road, Suite 100, Irving, TX 75063. Upon information and belief, Nautilus Hyosung America Inc. among other things, engages in the importation into the United States and sale after importation into the United States of automated teller machines, ATM modules, components thereof, and products containing the same, including the Accused Products described below. Upon information and belief, Nautilus Hyosung America Inc. is a subsidiary of Hyosung TNS Inc.

## JURISDICTION AND VENUE

6. This action arises under the patent laws of the United States, Title 35 of the United States Code. Thus, this Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

7. This Court has personal jurisdiction over Defendants, who have engaged in and conducted substantial business within the District of Delaware, including engaging in at least a portion of the infringing acts alleged herein through the sales, marketing, and service of

---

[2] Nautilus Hyosung, Inc. has changed its name to Hyosung TNS Inc.

2

infringing products in the District of Delaware. As such, Defendants have purposefully directed their activities at, and caused damages to, residents of this District.

8. Venue is proper in this District. Nautilus Hyosung America Inc. is a Delaware corporation, and therefore resides in Delaware for venue purposes in patent cases under 28 U.S.C. § 1400(b). Hyosung TNS, Inc. is a foreign corporation and can be sued in the District of Delaware, because venue is proper as to a foreign defendant in any district under 28 U.S.C. § 1391(c)(3).

## BACKGROUND

9. Since its founding in 1859, Diebold has been a leader in providing innovative products and services for the financial industry, first manufacturing safes and vaults, and later manufacturing more diversified financial equipment and providing first class service. In 1973, Diebold introduced its landmark Total Automatic Banking System 500 (TABS 500), the first automatic banking system of its kind.

10. Since then, Diebold has continued to be an innovator and leader in the security and financial self-services industry. In 2003, Diebold launched a new line of ATMs – the Opteva® series – setting a new level of performance, reliability and flexibility in the industry. And in 2015, Diebold launched its next generation line of ATMs (named the "Diebold Series"). Opteva® and the Diebold Series were the result of many years and millions of dollars of domestic research and development.

11. Research and development are keys to Diebold's success and provide the necessary cornerstone for its cutting-edge products. Diebold's research, development, and innovation in the financial and security industries have resulted in the issuance of more than 2,500 patents over the years.

12. This case involves two (2) patents that represent Diebold's pioneering innovations in deposit automation, cash dispensing, security, and service. These important patents include: (i) U.S. Patent No. 6,082,616, entitled "Automated Banking Machine Enclosure" (the "616 Patent"); and (ii) U.S. Patent No. 7,832,631, entitled "Method of Reading Coded Records Including Magnetic Indicia on Checks Deposited in an Automated Banking Machine" (the "631 Patent") (collectively, the "Asserted Patents").

13. The 616 Patent was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO") on July 4, 2000. A copy of the 616 Patent is attached hereto as Exhibit A.

14. Plaintiff Diebold Nixdorf Inc. is the owner and assignee of all rights, title, and interest in and to the 616 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

15. The 631 Patent was duly and lawfully issued by the USPTO on November 16, 2000. A copy of the 631 Patent is attached hereto as Exhibit B.

16. Plaintiff Diebold Self-Service Systems is the owner and assignee of all rights, title, and interest in and to the 631 Patent and holds the right to sue and recover damages for infringement thereof, including past damages.

## DEFENDANTS' INFRINGING ACTIVITIES

17. Plaintiffs incorporate the preceding paragraphs by reference as if fully set forth herein.

18. As discussed in further detail below, Defendants manufacture, import, and sell within the United States certain automated teller machines and components thereof (the "Accused Products") that infringe the Asserted Patents.

19. Hyosung also contributes to the infringement of the Asserted Patents by selling for importation into the United States, importing into the United States, and/or selling within the United States after importation the Accused Products and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the inventions described in the Asserted Patents. These devices are known by Hyosung to be especially made or especially adapted for use in the infringement of the Asserted Patents. Specifically, Hyosung sells the Accused Products to resellers and end users with knowledge that the devices infringe. End users of those devices directly infringe the Asserted Patents.

20. In addition, Hyosung also induces, and continues to induce, infringement of the Asserted Patents by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

21. Hyosung had actual knowledge of the Asserted Patents as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the Asserted Patents; (ii) described in claim charts how Hyosung, its customers, and/or users of the Accused Products infringed each of the Asserted Claims; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims. Upon information and belief, Hyosung had actual knowledge of at least the 631 Patent prior to October 16, 2015. *See In re Certain ATM Products, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-972, Initial Determination (I.T.C. Nov. 30, 2016) (Public Version) at p. 156 (attached hereto as Exhibit C) (finding that there "is strong circumstantial evidence that Nautilus

had knowledge of Diebold's patented technology, copied it, and encouraged its customers to use it in an infringing way.").

22. Hyosung's acts of infringement have caused damage to Diebold. Diebold is entitled to recover from Hyosung the damages sustained by Diebold as a result of Hyosung's wrongful acts in an amount subject to proof at trial.

23. Hyosung's infringement of the Asserted Patents has been and continues to be willful. Hyosung has committed and continues to commit acts of infringement despite a high likelihood that its actions constitute infringement, and Hyosung knew or should have known that its actions constituted infringement, and Hyosung knew or should have known that its actions constituted an unjustifiably high risk of infringement.

24. As such, Plaintiffs assert the following against Defendants:

**FIRST CAUSE OF ACTION**
**(Infringement of the 616 Patent)**

25. Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1, 2, 5- 8, 10, 16-18, 20, 22, 23, 26, and 27 of the 616 Patent in violation of 35 U.S.C. § 271 with respect to Hyosung ATMs having a rollout tray with a service opening including, but not limited to, the Halo, Halo S, NH2600, MX2600, Halo II, MX2600SE, MX5000CE, MX5000SE, MX5200XP, MX5200W7, MX5200SE, MX5300, MX5300CE, MX5300XP, and MX5600 ATMs (the "616 Accused Products"). A claim chart illustrating how the 616 Accused Products infringe the claims of the 616 Patent is attached as Exhibit C.

26. For example, Hyosung directly infringes the 616 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States the 616 Accused Products.

6

27. Hyosung has also induced, and continues to induce, infringement of the 616 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

28. For example, upon information and belief, Hyosung instructs and encourages users to use the Accused Products in a manner that infringes the asserted claims of the 616 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage its customers to perform certain maintenance procedures through the service opening of a rollout tray, including the repair or replacement of the encrypted pin pad ("EPP"), and (ii) the use of such procedures infringes the asserted claims of the 616 Patent.

29. Hyosung also contributes to the infringement of the 616 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation the Accused Products having a rollout tray with a service opening, for which there is no suitable or substantial noninfringing use and which embody a material part of the inventions described in the 616 Patent. In addition, upon information and belief, Accused Products having a rollout tray with a service opening are known by Hyosung to be made or especially adapted for use in the infringement of the Asserted Patents.

30. Hyosung's infringement has been willful and deliberate. Upon information and belief, Hyosung had actual knowledge of the 616 Patent as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the 616 Patent; (ii) described how Hyosung, its customers, and/or users of the Accused Products infringed certain of the Asserted Claims using claim charts; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims.

31.     Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 616 Patent.  Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

32.     Diebold has and will continue to be irreparably harmed should Hyosung continue to infringe the 616 Patent.  Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 616 Patent and from further inducing or contributing to the infringement of the 616 Patent.

**SECOND CAUSE OF ACTION**
**(Infringement of the 631 Patent)**

33.     Hyosung directly infringes, contributes to the infringement of, and/or induces the infringement of at least claims 1-8 and 12-20 of the 631 Patent in violation of 35 U.S.C. § 271 with respect to all deposit-automation equipped Hyosung ATMs with a Bulk Check Acceptor ("BCA"), a Cash & Check-in Module ("CCiM") and/or any other device having a width sensor, a stationary MICR head, and a movable MICR head.  Such devices are included in at least the following models of Hyosung ATMs: MX7600DA, MX7600DR, MX7600DS, MX7600FFL, MX7600I, MX7600R, MX7600T, MX7600TA, MX7600TL, MX7600TR, MX7600 Lobby, MX7800D, MX7800I, MX7800TTW, MX8200QT, MX8700QT 2.5.5, MX8700QT2.5.1, MX8700TCX and MX8800 (collectively, the 631 Accused Products).  A claim chart illustrating how the 631 Accused Products infringe the claims of the 631 Patent is attached as Exhibit H.

34.     Hyosung directly infringes the 631 Patent by making, using, selling, offering to sell within the United States and/or importing into the United States 631 Accused Products.

35.     Hyosung has also induced, and continues to induce, infringement of the 631 Patent by encouraging and facilitating others to perform acts known by Hyosung to infringe the

Asserted Patents with the specific intent that those performing the acts infringe the Asserted Patents.

36. For example, upon information and belief, Hyosung instructs and encourages users to use the 631 Accused Products in a manner that infringes the asserted claims of the 631 Patent in at least the following ways: (i) Hyosung advertises and distributes user manuals that encourage its customers to purchase BCAs and CCiMs and provide detailed instructions regarding how to install the BCA in an ATM and (ii) an ATM that includes a BCA or CCiM infringes the asserted claims of the 631 Patent. In addition, upon information and belief, Hyosung encourages ATM users to use Hyosung ATMs that include a BCA or CCiM by providing user manuals and advertisements that encourage use of deposit automation features of those ATMs. As found by the ITC, there "is strong circumstantial evidence that Nautilus had knowledge of Diebold's patented technology, copied it, and encouraged its customers to use it in an infringing way." *In re Certain Automated Teller Machines, ATM Products, Components Thereof, and Products Containing the Same*, Inv. No. 337-TA-972, Initial Determination (I.T.C. Nov. 30, 2016) (Public Version) at p. 156.

37. Hyosung also contributes to the infringement of the 631 Patent by selling for importation into the United States, importing into the United States, and/or or selling within the United States after importation the Accused Products and the non-staple constituent parts of those devices, which are not suitable for substantial noninfringing use and which embody a material part of the inventions described in the 631 Patent. These devices are known by Hyosung to be especially made or especially adapted for use in the infringement of the 631 Patent. Specifically, Hyosung sells the 631 Accused Products to resellers non-staple constituent parts of those devices, such BCAs, CCiMs, and other components including recognition modules

9

for BCAs and CCiMs, to customers and end users with knowledge that the devices will be used in a matter that infringes the 631 Patent infringe. End users of those devices directly infringe the 631 Patent. *See id.* at 157.

38. Hyosung's infringement has been willful and deliberate. Hyosung had actual knowledge of the 631 Patent and its infringement thereof at least as of at least October 16, 2015, when Diebold: (i) provided Hyosung with copies of the 631 Patent; (ii) described in claim charts how Hyosung, its customers, and/or users of the Accused Products infringed certain of the Asserted Claims; and (iii) described how Hyosung specifically encouraged its customers and/or users of the Accused Products to infringe each of the asserted claims. *See id.* at 155.

39. Moreover, the International Trade Commission has found that, prior to the filing of this Complaint, there "is strong circumstantial evidence that Nautilus had knowledge of Diebold's patented technology, copied it, and encouraged its customers to use it in an infringing way." *Id*. at p. 156. Such acts constitute willful and deliberate infringement for which enhanced damages should be awarded.

40. Diebold has been injured and seeks damages to adequately compensate it for Hyosung's infringement of the 631 Patent. Such damages should be no less than a reasonable royalty under 35 U.S.C. § 284.

41. Diebold has and will continue to be irreparably harmed should Hyosung continue to infringe the 631 Patent. Diebold therefore requests that this Court enter an order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer for sale, and/or import into the United States the products accused of infringing the 631 Patent and from further inducing or contributing to the infringement of the 631 Patent.

## DAMAGES

42. For the above-described infringement, Diebold has suffered injury and seeks a permanent injunction and damages, in an amount to be proven at trial, to adequately compensate it for Hyosung's infringement of the Asserted Patents. Such damages should be no less than the amount of a reasonable royalty under 35 U.S.C. § 284.

## JURY DEMAND

43. Diebold requests a jury trial of all issues triable of right by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Diebold respectfully requests the following relief:

a. A judgment in favor of Diebold that Hyosung has infringed the 616 Patent, whether literally or under the doctrine of equivalents, as described herein;

b. A judgment in favor of Diebold that Hyosung has infringed the 631 Patent, whether literally or under the doctrine of equivalents, as described herein;

c. A judgment that Hyosung's infringement of the asserted claims of the Asserted Patents was willful, and that Hyosung's continued infringement of the asserted claims was willful;

d. A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of the 616 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

e. A judgement and order awarding enhanced damages pursuant to 35 U.S.C. § 284 for Hyosung's infringement of the 616 Patent;

f. A judgment and order requiring Hyosung to pay Diebold's damages, costs, expenses, and pre-judgment and post-judgment interest for Hyosung's infringement of

the 631 Patent as provided under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict or post-judgment infringement with an accounting as needed;

  g. A judgement and order awarding enhanced damages pursuant to 35 U.S.C. § 284 for Hyosung's infringement of the 631 Patent;

  h. An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 616 Patent and from further inducing or contributing to the infringement of the 616 Patent;

  i. An order under 35 U.S.C. § 283 permanently enjoining Hyosung from continuing to make, use, sell, offer to sell, and/or import into the United States the products accused of infringing the 631 Patent and from further inducing or contributing to the infringement of the 631 Patent;

  j. A judgment and order that this is an exceptional case and awarding Nokia its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

  k. Such other relief as the Court deems just and proper.

|  |  |
|---|---|
| | MORRIS, NICHOLS, ARSHT & TUNNELL LLP |
| | |
| | */s/ Rodger D. Smith II* |
| | _____ |
| OF COUNSEL: | Rodger D. Smith II (#3778) |
| | Stephen J. Kraftschik (#5623) |
| Patrick J. Flinn | 1201 North Market Street |
| Keith E. Broyles | P.O. Box 1347 |
| David S. Frist | Wilmington, DE  19899 |
| Joshua M. Weeks | (302) 658-9200 |
| ALSTON & BIRD LLP | rsmith@mnat.com |
| One Atlantic Center | skraftschik@mnat.com |
| 1201 West Peachtree Street | |
| Suite 4200 | *Attorneys for Plaintiffs* |
| Atlanta, GA 30309 | |
| (404) 881-7000 | |
| | |
| September 27, 2019 | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 27, 2019, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 27, 2019, upon the following in the manner indicated:

Kevin C. Wheeler   *VIA ELECTRONIC MAIL*
LATHAM & WATHKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC  20004
*Attorney for Defendants*

*/s/ Rodger D. Smith II*

Rodger D. Smith II (#3778)